# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEITH WRIGHT, | ) |
| Plaintiff, | ) ) ) |
| v. | )  Case No. CIV-18-217-G ) |
| UNKNOWN GATE OPERATOR et al., | ) ) ) ) |
| Defendants. | ) |

## ORDER

Plaintiff Keith Wright, appearing pro se, alleges violations of the United States Constitution and state law against five Defendants. *See* Compl. (Doc. No. 1) at 1-3. For the reasons outlined below, the Court finds that Plaintiff's Complaint should be dismissed.

BACKGROUND

Plaintiff, a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR") who is currently incarcerated in California City, California, brings claims arising from events that transpired in November 2014 while Plaintiff was housed at a facility in Sayre, Oklahoma. *See* Compl. at 1, 4, 23. At the time, the facility was called North Fork Correctional Facility ("NFCF") and was operated by an entity called Corrections Corporation of America ("CCA"). *Id.* at 2, 4.

Plaintiff brings his claims against five Defendants: (1) Unknown Gate Operator ("UGO"), a correctional officer at NFCF; (2) CCA; (3) Mr. Baseman, a correctional officer at NFCF; (4) Patricia Smith, an appeals coordinator at Tallahatchie County Correctional Facility ("TCCF") in Tutwiler, Mississippi; and (5) T. Taber, an appeals coordinator for

CDCR in Rancho Cordova, California. *See id.* at 2, 3. Plaintiff roughly divides his legal claims into three sections. The first, Section I, raises federal and state-law claims against Defendants UGO, Baseman, and CCA. *See id.* at 4-8. Section II comprises federal and state-law claims against Defendants CCA and UGO. *See id.* at 8, 9-17. Section III consists of federal and state-law claims against Defendants Smith and Taber. *See id.* at 18-20, 22. Plaintiff does not indicate whether he is suing the individual Defendants in their official or individual capacities; he seeks both monetary damages and declaratory relief. *See id.* at 21.

## THE COURT'S SCREENING OBLIGATION

The Court is obligated to conduct an initial review of Plaintiff's Complaint to identify its cognizable claims and to dismiss the pleading, or any portion thereof, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1); Doc. No. 13. A pro se litigant's complaint must be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The broad construction accorded to a pro se litigant's allegations does not, however, "relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

ANALYSIS

I. *Plaintiff's Federal Claims*

    A. *Section I: Federal Claims Against Defendants UGO, Baseman, and CCA*

In Section I, Plaintiff alleges that on November 20, 2014, he was injured when a sliding steel gate at NFCF "closed negligently on Plaintiff's left shoulder with impact propelling him into the concrete wall." Compl. at 4. According to Plaintiff, medical treatment was provided after the incident. *See id.* at 4-5.

Plaintiff's 42 U.S.C. § 1983 claims concern Defendants UGO's, Baseman's, and CCA's later handling of the gate incident. Plaintiff asserts that these Defendants "treated Plaintiff differently once he became injured in their custody" by refusing to tell Plaintiff which official was responsible for the injury and by failing to provide Plaintiff with an incident report and answer his grievance, thereby violating Plaintiff's Fourteenth Amendment right to equal protection. *See id.* at 4-6, 7, 8.

        1. *The Relevant Statute of Limitations*

A district court may sua sponte dismiss a § 1983 claim based on an affirmative defense—such as an expired statute of limitations—"when the defense is obvious from the face of the complaint and no further factual record is required to be developed." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal quotation marks omitted); *see also Jackson v. Standifird*, 463 F. App'x 736, 737 (10th Cir. 2012) ("Dismissal of a claim as time-barred is treated as a dismissal for failure to state a claim."). The length of the limitations period, as well as the applicability of any tolling rules, is determined by the forum state's law governing personal-injury suits generally. *See Owens v. Okure*, 488 U.S.

235, 236 (1989); *Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). Oklahoma's relevant limitations period is two years. *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011) (citing Okla. Stat. tit. 12, § 95(A)(3)).

"Federal law governs when the action accrues." *Id.* A § 1983 claim accrues, and the applicable limitations period begins to run, "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998) (internal quotation marks omitted); *accord Mondragón*, 519 F.3d at 1082. In most cases, the state actor's allegedly unconstitutional conduct itself—i.e., "the injury which is the basis of the action"—triggers the applicable statute of limitations. *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005) (internal quotation marks omitted); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) (noting that, as a general rule, "accrual occurs when the plaintiff has a complete and present cause of action"—i.e., "when the plaintiff can file suit and obtain relief" (alteration, citations, and internal quotation marks omitted)).

Plaintiff alleges that the relevant equal-protection violations transpired between December 18, 2014, and when he was transferred from NFCF to TCCF "in Sept[ember] 2015." Compl. at 4-5, 8. As a result, it is plain from the Complaint that these § 1983 claims accrued no later than September 30, 2015, and that the two-year limitations period expired no later than September 30, 2017. This was well before Plaintiff's filing of this lawsuit on March 6, 2018. *See id.*; Doc. No. 1-1; *Smith*, 149 F.3d at 1154.

## 2. *Equitable Tolling*

Plaintiff's § 1983 equal-protection claims therefore must be dismissed as time-barred unless Plaintiff's allegations implicate a ground to find that the limitations period should be tolled. Recognizing the apparent lateness of Plaintiff's claims, the Court notified Plaintiff that his pleading was subject to dismissal and gave him the opportunity to address the timeliness issue. *See* Order to Show Cause (Doc. No. 16) at 1. Plaintiff was directed "to show cause—that is, to fully detail any reason, including possible tolling—why his Complaint should not be promptly dismissed on statute of limitations grounds." *Id.*; *see also Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1097 (10th Cir. 2009) ("When a district court believes it is likely that a *pro se* prisoner's § 1983 complaint is dismissible on the basis of the state's statute of limitations, the court may issue a show cause order giving the plaintiff an opportunity to explain why the statute of limitations should be tolled.").

In his Response to that Order, Plaintiff argues that he is entitled to equitable tolling, as to his entire pleading, for the time he spent seeking administrative relief from prison officials following the gate incident of November 20, 2014. *See* Pl.'s Resp. (Doc. No. 17) at 2-4. In support, Plaintiff has submitted some administrative filings and correspondence, along with a summary of exhaustion efforts that he alleges to have culminated on October 30, 2017. *See id.*; Pl.'s Resp. Exs. 1-7 (Doc. Nos. 17-1 to 17-7).

Absent exceptional circumstances, the application of equitable tolling to Plaintiff's federal civil rights claims is governed by Oklahoma law. *See Young v. Davis*, 554 F.3d 1254, 1258 (10th Cir. 2009); *Breedlove v. Costner*, 405 F. App'x 338, 342 (10th Cir. 2010); *see also Miller v. Ford*, No. CIV-14-1124-R, 2016 WL 4761570, at *7 & n.8 (W.D. Okla.

5

June 30, 2016) (R. & R.), *adopted*, 2016 WL 4742323 (W.D Okla. Sept. 12, 2016), *and aff'd*, 697 F. App'x 611 (10th Cir. 2017).

> Under Oklahoma law, equitable tolling is appropriate when: (1) there is a legal disability because the plaintiff's competency is impaired or the plaintiff has not yet reached the age of majority; or (2) when defendants engage in false, fraudulent or misleading conduct calculated to lull plaintiffs into sitting on their rights.

*Breedlove*, 405 F. App'x at 342 (internal quotation marks omitted) (citing *Young*, 554 F.3d at 1258).

The allegations of Plaintiff's Complaint "do not fit within any of these circumstances." *Young*, 554 F.3d at 1258 (affirming dismissal of *Bivens* claim on § 1915A screening as barred by the statute of limitations). Plaintiff does not claim he is under a "legal disability" or that Defendants engaged in "false, fraudulent[,] or misleading conduct" to lull Plaintiff into sitting on his rights. *Id.* (internal quotation marks omitted); *see also Breedlove*, 405 F. App'x at 342. The Tenth Circuit has rejected the argument that incarceration amounts to a "legal disability" for purposes of tolling the statute of limitations under Oklahoma law. *See Heuston v. Ballard*, 578 F. App'x 791, 793 (10th Cir. 2014). And, while Plaintiff alleges "improprieties" by Defendants, none of these amount to "specific circumstances warranting tolling." *Breedlove*, 405 F. App'x at 342.

Plaintiff's premise—that his limitations period should be tolled for the time he was exhausting his prison complaints, because exhaustion of federal claims is required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a)—fails to show that tolling should be applied in this case. *See Pemberton v. Patton*, 639 F. App'x 532, 536 (10th Cir. 2016) (noting that it was the plaintiff's burden on screening "to prove that tolling applied").

The Tenth Circuit has rejected the idea that the PLRA "tolls the limitations period" on § 1983 claims brought in an Oklahoma federal district court, because "[n]othing in § 1997e(a) refers to tolling" and "Oklahoma has no tolling for state limitations periods for prisoner exhaustion." *Pemberton v. Patton*, 673 F. App'x 860, 866 (10th Cir. 2016) (internal quotation marks omitted); *accord Miller*, 697 F. App'x at 612 (noting that none of the "limited situations" permitting tolling under Oklahoma law "are applicable" to time spent exhausting administrative remedies).[1]

In addition, the documents submitted by Plaintiff reflect that he sought administrative relief only for the injuries he sustained in the gate incident. *See* Pl.'s Resp. Ex. 1 (Doc. No. 17-1) at 1 (Plaintiff stating that he submitted an appeal form regarding the gate incident of November 20, 2014); *id.* Ex. 5 (Doc. No. 17-5) at 2 ("[M]y injuries are a direct result of being closed in gate (slider) by control correctional officer."); *id.* Ex. 6 (Doc. No. 17-6) at 1 ("I expect to be compensated monetarily for injuries received when I was closed in gate."); *id.* at 3 (Plaintiff noting as the subject of the appeal: "I sustained an injury when I was closed in a[n] electric gate/slider."). Such administrative complaints would not reasonably notify prison officials of Plaintiff's relevant claim in this lawsuit: that Plaintiff was treated differently from other inmates *after* he became injured. Stated differently, Plaintiff's administrative filings, which sought relief for injuries sustained

---

[1] Further, nothing prevented Plaintiff "from filing suit and then contesting any exhaustion defense under the principle announced in *Little v. Jones*: 'Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy "unavailable" and a court will excuse the prisoner's failure to exhaust.'" *Pemberton*, 673 F. App'x at 866 (quoting *Little*, 607 F.3d 1245, 1250 (10th Cir. 2010)).

directly in the incident on November 20, 2014, would not "sufficiently alert prison officials as to the nature of the alleged wrong" in Plaintiff's present § 1983 claim of violation of his equal-protection rights from December 18, 2014, through September 2015. *Davis v. Okla. Dep't of Corr.*, No. CIV-06-229-HE, 2007 WL 869650, at *11 (W.D. Okla. Mar. 20, 2007); *see* Compl. at 4-8; Pl.'s Resp. Exs. 1, 2, 6; *see also Kikumura v. Osagie*, 461 F.3d 1269, 1282-85 (10th Cir. 2006) (holding that PLRA's exhaustion requirement is satisfied "so long as [the federal inmate's grievance] provides prison officials with enough information to investigate and address the inmate's complaint internally"), *overruled on other grounds as recognized in Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008); *accord Pfeil v. Lampert*, 603 F. App'x 665, 671 (10th Cir. 2015) (applying *Kikumura*'s standard to state prisoner's exhaustion of federal claims). Thus, even assuming equitable tolling could be available for time spent on PLRA exhaustion, such tolling is not applicable here, where the complaint that was being exhausted is not the basis of the current § 1983 claim.

    3. *Summary*

Because no grounds for equitable tolling exist as to these claims, Plaintiff's § 1983 equal-protection claims against Defendants UGO, Baseman, and CCA shall be dismissed as untimely. *See Pemberton*, 673 F. App'x at 866; *Miller*, 697 F. App'x at 612; *Young*, 554 F.3d at 1256, 1258.

   B. *Section II: Plaintiff's Federal Claims Against Defendants CCA and UGO*

In Section II, Plaintiff again focuses upon Defendants' conduct following Plaintiff's first submission for administrative relief on December 18, 2014. According to Plaintiff, Defendants CCA and UGO delayed and blocked processing of Plaintiff's administrative

requests to ensure that Plaintiff was unable to exhaust his remedies. *See* Compl. at 8, 9-17. Plaintiff further asserts that this failure to provide proper administrative process violated his due process rights under the Fourteenth Amendment and amounted to unlawful retaliation for Plaintiff attempting to find out more information about the sliding-gate incident by exercising his First Amendment rights. *See id.* at 11-12, 15-17.

As with Plaintiff's Section-I equal-protection claims, Plaintiff alleges that the relevant events of these claims occurred between December 18, 2014, and his transfer away from NFCF on or before September 30, 2015. *See id.* at 9-10. Plaintiff's two-year statute of limitations therefore expired no later than September 30, 2017, and his filing of these claims in federal court on March 6, 2018, was untimely. *See McCarty*, 646 F.3d at 1289; *Smith*, 149 F.3d at 1154; *Price*, 420 F.3d at 1163. And, again, Plaintiff has not shown that equitable tolling can or should be applied to these claims, as Plaintiff's basis for such tolling—his exhaustion efforts—did not concern Defendants' post-incident handling of his requests for relief from prison officials. *See* Pl.'s Resp. Exs. 1-7. It follows that these claims must be dismissed as time-barred.

*C. Section III: Plaintiff's Federal Claims Against Defendants Smith and Taber*

Plaintiff alleges that after his September 2015 transfer to TCCF, he renewed his effort to obtain administrative relief on the November 2014 NFCF gate incident. According to Plaintiff, he submitted an administrative appeal on February 9, 2016, that "related back" to the shoulder injury he sustained at that time. Compl. at 18. Plaintiff asserts that from February 19, 2016, until April 12, 2016, Defendant Smith (at TCCF in Mississippi) and Defendant Taber (at CDCR in California) erroneously treated his

9

complaint as a "staff misconduct" and conducted the proceedings on his complaint in a manner that did not accord with California law and the state prison system's regulations, thereby violating Plaintiff's due process rights under the Fourteenth Amendment. *See id.* at 18-20, 22. Plaintiff further asserts that these Defendants' improper processing of his complaints was an act of unlawful retaliation to attempt to "quiet Plaintiff about the matter." *Id.* at 22.

These claims appear to be timely brought (though likely unexhausted for PLRA purposes). Pursuant to the Court's screening obligation, however, the Court may consider sua sponte whether personal jurisdiction over a claim is lacking "when the defense is obvious from the face of the complaint and no further factual record is required to be developed." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (internal quotation marks omitted); *accord Lewis v. Ctr. Mkt.*, 378 F. App'x 780, 787 (10th Cir. 2010) ("The district court may properly consider personal jurisdiction and venue on a § 1915 screening . . . .").[2] A district court may dismiss a claim under the federal screening statutes "if it is clear that the plaintiff can allege no set of facts to support personal jurisdiction." *Trujillo*, 465 F.3d at 1217 (alteration, citation, and internal quotation marks omitted).

---

[2] Although the Court need not additionally examine venue, it appears that venue here is lacking and dismissal or transfer would be warranted on that basis as well. Venue in these circumstances is proper in a judicial district: (1) where any defendant resides, if all defendants are residents of the state in which that district is located; or (2) where a substantial part of the events or omissions giving rise to the claims occurred. *See* 28 U.S.C. § 1391(b)(1), (2). Neither Defendant Smith nor Defendant Taber is alleged to reside in Oklahoma, and no events relevant to the Section-III claims are alleged to have occurred within the Western District of Oklahoma. *See* Compl. at 18-20, 22.

*1. Personal Jurisdiction*

On its face, the Complaint does not establish that this Court may exercise personal jurisdiction over Defendants Smith or Taber. Although Plaintiff fails to specifically allege their residencies, the Court reasonably infers from Plaintiff's allegations that Defendant Taber, who works at TCCF in Mississippi, is a not a resident of Oklahoma and that Defendant Smith, who works in California for CDCR, is not a resident of Oklahoma. *See* Compl. at 2, 3, 18, 19-20. "In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo*, 465 F.3d at 1217 (internal quotation marks omitted). Section 1983, which allows civil-rights actions against defendants acting under color of state law, "does not, by itself, confer nationwide service of process or jurisdiction upon federal district courts to adjudicate claims." *Id.* Federal Rule of Civil Procedure 4(k)(1)(A), therefore, refers the Court to the jurisdictional statutes of Oklahoma as the forum state for this action. *See id.*; Fed. R. Civ. P. 4(k)(1)(A). Oklahoma's long-arm statute, Okla. Stat. tit. 12, § 2004(F), "authorizes jurisdiction coextensive with the [federal] Due Process Clause." *United States v. Bigford*, 365 F.3d 859, 873 n.11 (10th Cir. 2004). "Therefore, if jurisdiction is consistent with the Due Process Clause, Oklahoma's long arm statute authorizes jurisdiction over a nonresident defendant." *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1131 (10th Cir. 1991).

"The exercise of jurisdiction over a nonresident defendant comports with due process so long as there exist minimum contacts between the defendant and the forum State." *Trujillo*, 465 F.3d at 1217 (internal quotation marks omitted) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). "The minimum contacts necessary for specific personal jurisdiction may be established where the defendant has 'purposefully directed' its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *Id.* at 1218 (internal quotation marks omitted). "The minimum contacts standard is also satisfied, and a court may maintain personal jurisdiction over a nonresident defendant, based on the defendant's 'continuous and systematic' general business contacts with the forum state." *Banks v. Partyka*, No. CIV-07-331-F, 2007 WL 2693180, at *4 (W.D. Okla. Sept. 11, 2007) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).

There is nothing in Plaintiff's pleading to show that this Court's exercise of jurisdiction over Defendant Smith, an employee at CCA's prison facility TCCF in Mississippi, or over Defendant Taber, an employee of California's correctional system in that state, in any capacity, would satisfy the requirements of the Due Process Clause. "[Plaintiff] has alleged no facts suggesting that [these Defendants have] purposely directed activities toward this jurisdiction, that [the claims in Section III are] based upon activities that arise out of or relate to any contacts of [these Defendants] with Oklahoma, or that [Defendant Smith or Defendant Taber] has engaged in systematic and continuous activity in Oklahoma." *Id.* at *5. "Moreover, given the nature of the claims against [these

Defendants], it does not appear that Plaintiff could allege facts sufficient to support such a conclusion." *Id.*; *see* Compl. at 18-20, 22. Thus, Plaintiff's pleading fails to show that the Court's exercise of personal jurisdiction over Defendant Smith or Defendant Taber would comport with due process. *See Trujillo*, 465 F.3d at 1217; *Banks*, 2007 WL 2693180, at *4-5.

### 2. *Dismissal or Transfer*

Because the Court lacks personal jurisdiction over these Defendants, the Court has discretion either to dismiss, or, "if it is in the interest of justice," to transfer the claims to an appropriate court. 28 U.S.C. § 1631; *see Trujillo*, 465 F.3d at 1222-23, 1222 n.15. The Tenth Circuit has explained: "[F]actors warranting transfer rather than dismissal, at least under § 1631, include finding that the new action would be time barred; that the claims are likely to have merit; and that the original action was filed in good faith rather than filed after plaintiff either realized or should have realized that the forum in which he or she filed was improper." *Trujillo*, 465 F.3d at 1223 n.16 (citations and internal quotation marks omitted).

Here, Plaintiff did initially file this action in a California federal district court. *See* Doc. No. 3 (order transferring case to this Court on venue grounds). And a new § 1983 action, based on wrongdoing that transpired from February to April 2016, might be time barred if brought in California but likely would not be time barred if brought in Mississippi. *See Jacobsen v. Diaz*, No. 1:18-cv-00199-BAM (PC), 2018 WL 3629695, at *3 (E.D. Cal. July 27, 2018) (noting that a two-year limitations period applies to § 1983 actions in

13

California);[3] *Walker v. Epps*, 550 F.3d 407, 415 (5th Cir. 2008) (noting that a three-year statute of limitations applies to § 1983 action in Mississippi).

But the third factor weighs heavily against transfer to another forum, as Plaintiff's federal due process and retaliation claims are not "likely to have merit." *Trujillo*, 465 F.3d at 1223 n.16.

As noted, Plaintiff's alleged due process violation is founded entirely upon Defendant Smith's and Defendant Taber's handling of Plaintiff's administrative complaints—e.g., their failure to identify the Unknown Gate Operator to Plaintiff, their treatment of his submission as a staff complaint, and their supervision of the administrative hearing. A plaintiff presenting a procedural due process claim must allege two elements: (1) the plaintiff had "a liberty or property interest which has been interfered with by the State"; and (2) the procedures employed to deprive the plaintiff of liberty or property were constitutionally insufficient. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Although Plaintiff contends he has a liberty interest in California's grievance procedure, *see* Compl. at 10, 16, "there is no independent constitutional right to state administrative grievance procedures," and "[a] viable due process claim cannot rest on allegations of an unfair or inadequate grievance process." *Burnett v. Allbaugh*, 715 F. App'x 848, 852 (10th Cir. 2017) (alteration and internal quotation marks omitted). "[T]his legal principle applies

---

[3] Although California has no express savings statute that would toll his statute of limitations during the pendency of this lawsuit, "[u]nder California law, the two-year statute of limitations is tolled during the time a prisoner pursues his administrative remedies, and is potentially tolled up to an additional two years if [the plaintiff] is incarcerated for a term of less than life." *Jacobsen*, 2018 WL 3629695, at *3; *see Kendrick v. City of Eureka*, 82 Cal. App. 4th 364, 370 n.3 (Cal. Ct. App. 2000).

14

regardless of the grievance policy's jurisdiction." *Id.* Relevant to the grievance policy at issue here, "the fact that the California Code of Regulations provides a procedure for inmates to assert their grievances does not, in itself, create a federally protected liberty interest." *Martin v. Hurtado*, No. 07cv0598 BTM (RBB), 2008 WL 4145683, at *12 (S.D. Cal. Sept. 3, 2008) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure.")). "Because [Plaintiff] does not have an entitlement to a specific grievance procedure, he cannot state a claim under § 1983 based on any alleged deficiencies in the processing of his grievance" by Defendant Smith or Defendant Taber. *Id.*; *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Plaintiff also fails to plead a retaliation claim that is likely to succeed. Plaintiff alleges that Defendants Taber and Smith improperly handled his administrative complaints "in retaliation as an adverse act" and as an attempt to clear the gate operator of wrongdoing and "quiet Plaintiff about the matter in TCCF and CDCR." Compl. at 22. Prison officials may not retaliate against an inmate on account of, or otherwise harass an inmate in retaliation for, the inmate's exercise of rights protected by the First Amendment. *See Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). "This principle applies even where the action taken in retaliation would be otherwise permissible." *Id.* at 948.

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and

15

(3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).[4]

Here, however, Plaintiff's "attribution of retaliatory motive is conjectural and conclusory." *Strope v. Cummings*, 381 F. App'x 878, 883 (10th Cir. 2010). Plaintiff relies only upon his own speculation as to motive and fails to present any "specific facts" showing that Defendants Smith and Taber engaged in retaliatory conduct "*on account of*" Plaintiff's exercise of constitutional rights through use of the prison grievance process. *Brown v. Wyo. Dep't of Corr. State Penitentiary Warden*, 234 F. App'x 874, 877 (10th Cir. 2007) (alteration and internal quotation marks omitted) (emphasis added). Merely engaging in constitutionally protected activity "alone does not establish the requisite causal connection for his retaliation claim." *Strope*, 381 F. App'x at 883. Thus, Plaintiff fails to state a plausible retaliation claim. *See id.*; *see also Long*, 2010 WL 1418858, at *1 ("An inmate's personal belief that he is a victim of retaliation is not sufficient to support a claim."); *Rollins v. Adams*, No. CV08-01212-ROS, 2010 WL 1027426, at *1 (E.D. Cal. Mar. 18, 2010) ("Plaintiff's retaliation claim can succeed only if he 'shows a causal connection between a

---

[4] The Court would reach the same conclusion under either Ninth Circuit or Fifth Circuit authority. *See Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) ("Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." (footnote omitted)); *Long v. Carroll Cty.*, No. 4:10CV018-P-S, 2010 WL 1418858, at *1 (N.D. Miss. Apr. 7, 2010) ("To state a claim for retaliation under § 1983, a plaintiff must allege (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for exercise of that right; (3) a retaliatory adverse act; and, (4) causation." (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999))).

defendant's retaliatory animus and subsequent injury.'" (alteration omitted) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006))).

    3. *Summary*

Under these circumstances, transfer of the federal claims against Defendants Smith and Taber would not serve the interests of justice. These claims should be dismissed without prejudice. *See* 28 U.S.C. § 1631; *Trujillo*, 465 F.3d at 1222-23; *Banks*, 2007 WL 2693180, at *1, *4-5.

II. *Plaintiff's State-Law Claims*

In addition to Plaintiff's § 1983 claims, Plaintiff raises state-law claims against all five Defendants. As a basis for the Court's jurisdiction over this lawsuit, Plaintiff states, simply, "*Erie* Doctrine." Compl. at 1 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The Court liberally construes this statement as attempting to invoke the Court's diversity jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1332. *See Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017) ("In diversity cases, the *Erie* doctrine instructs that federal courts must apply state substantive law and federal procedural law."); 28 U.S.C. § 1332(a)(1) (providing that "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States"); Compl. at 21 (seeking more than $75,000 in monetary relief). The attempt does not succeed.

With respect to Defendants Smith and Taber, the lack of personal jurisdiction over these Defendants precludes the Court from hearing Plaintiff's diversity claims against

them. *See Williams*, 927 F.2d at 1131 ("In a diversity case a plaintiff must satisfy the requirements of the forum's long arm statute as well as the federal Constitution to establish personal jurisdiction."). With respect to the other Defendants, the Court is obligated to examine its own subject-matter jurisdiction over any diversity claims raised in this lawsuit. *See* Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006); *Harris v. Tulsa 66ers*, 551 F. App'x 451, 451 & n.3 (10th Cir. 2014).

To invoke the jurisdiction of a federal district court, a complaint must affirmatively allege "the grounds for [the] court's jurisdiction." Fed. R. Civ. P. 8(a)(1). Although Plaintiff is proceeding pro se, as "[t]he party seeking the exercise of jurisdiction in his favor" he "must allege in his pleading the facts essential to show jurisdiction." *McBride v. Doe*, 71 F. App'x 788, 789 (10th Cir. 2003) (internal quotation marks omitted). "When suing multiple defendants in a diversity action, the plaintiff bears the burden of providing that diversity jurisdiction exists for each defendant." *Id.* The Court "must look to the face of the complaint, ignoring mere conclusory allegations of jurisdiction." *Penteco Corp. Ltd. P'ship-1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (citation omitted).

First, Plaintiff fails to allege facts about himself that are "essential to show jurisdiction." *McBride*, 71 F. App'x at 789 (internal quotation marks omitted). Although "a prisoner is presumed to be a citizen of the state of which he was a citizen before his incarceration," Plaintiff makes no allegation as to what state that might be. *Smith v. Cummings*, 445 F.3d 1254, 1260 (10th Cir. 2006). Although one might suppose that Plaintiff was a citizen of California, because he is currently in the custody of CDCR, "in

light of the fact that there is a presumption against diversity jurisdiction and the burden is upon the one asserting it to affirmatively sustain it," the Court "is not satisfied that diversity jurisdiction exists based solely on the inference that [Plaintiff's] citizenship for diversity purposes prior to incarceration was California." *Robinson v. Brown & Williamson Tobacco Corp.*, 909 F. Supp. 824, 826 (D. Colo. 1995).

Second, Plaintiff fails to allege facts about the relevant Defendants that are essential to show jurisdiction. Plaintiff alleges that Defendants UGO and Baseman worked at NFCF in November 2014 but offers no facts about where these individuals reside. *See* Compl. at 2. Plaintiff sets forth no factual allegations regarding where Defendant CCA is incorporated and where it has its principal place of business. *See* Compl. at 2; 28 U.S.C. § 1332(c)(1) (prescribing that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business"); *McBride*, 71 F. App'x at 790 (affirming dismissal of pro se prisoner's complaint for failure to allege facts to establish diversity jurisdiction where the plaintiff did not allege the defendant's "citizenship, state of incorporation, or principal place of business").

In sum, Plaintiff has failed to allege facts sufficient to show that 28 U.S.C. § 1332 would authorize this Court to exercise subject-matter jurisdiction over Plaintiff's state-law claims. *See* Fed. R. Civ. P. 12(h)(3); *McBride*, 71 F. App'x at 790. The Court could, however, exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367, and Plaintiff requests that the Court do so. *See* Compl. at 1 (Plaintiff citing 28 U.S.C. § 1367(a) as a basis for jurisdiction). Having dismissed all of Plaintiff's federal claims,

the Court declines to proceed with the remaining state-law claims. *See Smith*, 149 F.3d at 1156 ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

## CONCLUSION

Based upon the foregoing findings, Plaintiff's Complaint (Doc. No. 1) is hereby dismissed in its entirety without prejudice to refiling. Specifically:

- Plaintiff's federal claims against Defendants UGO, Baseman, and CCA are dismissed without prejudice as untimely;

- Plaintiff's federal claims against Defendants Smith and Taber are dismissed without prejudice for lack of personal jurisdiction over these Defendants; and

- Having dismissed all of Plaintiff's federal claims, and determined that no independent ground exists for the Court to exercise subject-matter jurisdiction over Plaintiff's remaining state-law claims, the Court declines to exercise supplemental jurisdiction over the state-law claims.

IT IS SO ORDERED this 4th day of February, 2019.

_____
CHARLES B. GOODWIN
United States District Judge